**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

McGRAW-HILL SCHOOL EDUCATION
HOLDINGS, LLC, et al.,

      Plaintiffs and Counterclaim Defendants,

               -against-

JON FEINGERSH PHOTOGRAPHY, INC.,

      Defendant and Counterclaim Plaintiff.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

:   No. 14-CV-5050 (GBD)

:   **Oral Argument Requested**


# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Christopher P. Beall
Marisa Office
Levine Sullivan Koch & Schulz, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
(T): (212) 850-6100
(F): (212) 850-6299
cbeall@lskslaw.com
moffice@lskslaw.com

*Attorneys for Plaintiffs McGraw-Hill*
*School Education Holdings, LLC and*
*McGraw-Hill Global Education*
*Holdings, LLC*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

SUMMARY OF FACTUAL BACKGROUND ......................................................2

ARGUMENT..........................................................................................................8

I.  LEGAL STANDARD.................................................................................9

II.  MHE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON JFPI'S COPYRIGHT INFRINGEMENT CLAIM SHOULD BE GRANTED ....................10

    A.  JFPI CONCEDEDLY CANNOT SHOW INFRINGEMENT FOR 86 CLAIMS .......................................................................................10

    B.  JFPI CANNOT SHOW INFRINGEMENT FOR 23 ADDITIONAL CLAIMS .......................................................................................11

    C.  DAMAGES ARE ONLY AVAILABLE FOR INFRINGING ACTS THAT OCCURRED AFTER JULY 7, 2011 ................................12

III.  MHE'S MOTION FOR SUMMARY JUDGMENT AS TO JFPI'S BREACH OF CONTRACT CLAIM SHOULD BE GRANTED ..............................................13

    A.  JFPI Cannot Establish The Requisite Standing To Bring Its Breach Of Contract Claim ..........................................................................13

        1.  JFPI Cannot Show That It Is A Third Party Beneficiary ...................13

        2.  JFPI Cannot Show An Assignment Of Corbis's Rights.......................16

    B.  JFPI Cannot Establish The Elements Of A Breach Of Contract ...................16

        1.  JFPI Cannot Show Satisfaction Of The Condition Precedent ..............17

        2.  The Contract Provision At Issue Is Unenforceable As A Matter Of Law ..........................................................................18

        3.  The Ten Times Provision Must Be Subordinated To More Specific Contract Provisions.............................................................21

    C.  JFPI Cannot Establish That The Ten Times Provision Applies To Invoices Prior To January 1, 2003 Or After February 26, 2009....................22

IV.  MHE'S MOTION FOR SUMMARY JUDGMENT AS TO JFPI'S ATTORNEY'S FEES CLAIM SHOULD BE GRANTED .......................................23

CONCLUSION.....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amies v. Wesnofske,*
255 N.Y. 156 (1931).................................................................................18

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................9

*Aramony v. United Way of Am.,*
254 F.3d 403 (2d Cir. 2001) ....................................................................21

*In re Bankers Trust Co.,*
450 F.3d 121 (2d Cir. 2006) ....................................................................18

*Bill Diodato Photography, LLC v. Kate Spade, LLC,*
388 F. Supp. 2d 382 (S.D.N.Y. 2005) .....................................................9

*Bourne v. Walt Disney Co.,*
68 F.3d 621 (2d Cir.1995) .......................................................................11

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..............................................................................9, 24

*Chivalry Film Prods. v. NBC Universal, Inc.,*
No. 05 Civ. 5627(GEL), 2006 WL 89944 (S.D.N.Y. Jan. 11, 2006)....................24

*Degginger v. McGraw-Hill Global Educ. Holdings LLC,*
No. CV-14-2429-TUC-DCB, 2015 WL 917938 (D. Ariz. Mar. 3, 2015).......................23, 24

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.,*
80 F. Supp. 3d 535 (S.D.N.Y. 2015)........................................................12

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,*
66 N.Y.2d 38 (1985)................................................................................14

*Grunewald v. Metro. Museum of Art,*
125 A.D.3d 438 (1st Dep't 2015)..............................................................15

*Hamil Am., Inc. v. GFI,*
193 F.3d 92 (2d Cir. 1999) ......................................................................10

*Jarro Bldg. Indus. Corp. v. Schwartz,*
54 Misc. 2d 13 (2d Dep't 1967)...............................................................20

*Jeffreys v. City of N.Y.*,
  426 F.3d 549 (2d Cir. 2005) ............................................................................9

*John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*,
  717 F.2d 664 (2d Cir. 1983) ..........................................................................21

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986) ................................................................................9

*Lefkowitz v. Houghton Mifflin Harcourt Publ'g Co.*,
  No. 12-10614-FDS, 2013 WL 3816717 (D. Mass. July 19, 2013)................... 15, 16

*Madeira v. Affordable Hous. Found., Inc.*,
  469 F.3d 219 (2d Cir. 2006) ..........................................................................14

*Mahoney v. Sony Music Entm't*,
  No. 12 Civ. 5045 (RJS) (AJP), 2013 WL 491526 (S.D.N.Y. Feb. 11, 2013) ........17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ........................................................................................9

*MCA Television Ltd. v. Pub. Interest Corp.*,
  171 F.3d 1265 (11th Cir. 1999)......................................................................20

*N.Y. Times Co. v. Tasini*,
  533 U.S. 483 (2001) ......................................................................................11

*Palmer/Kane LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
  No. CIV.A. 13-11030-GAO, 2014 WL 183774 (D. Mass. Jan. 16, 2014)............15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014) ................................................................................2, 12

*Phillips v. Phillips*,
  820 S.W.2d 785 (Tex. 1991)...........................................................................19

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
  19 F. Supp. 2d 157 (S.D.N.Y. 1998)................................................................14

*Premium Mortg. Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009) ..........................................................................13

*Quarles v. Gen. Motors Corp.*,
  758 F.2d 839 (2d Cir. 1985) ............................................................................9

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ..........................................................................10

*Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*,
   525 F.3d 409 (6th Cir. 2008) ..............................................................21

*Saska v. Metro. Museum of Art*,
   42 Misc. 3d 548 (Sup. Ct. N.Y. Cty. Oct. 29, 2013) ..............................15

*Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., Inc.*,
   No. 3:09-CV-01098, 2011 WL 4729807 (M.D. Tenn. Oct. 7, 2011) ................24

*Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*,
   335 F. Supp. 2d 466 (S.D.N.Y. 2004) ..................................................19

*Straus v. DVC Worldwide, Inc.*,
   484 F. Supp. 2d 620 (S.D. Tex. 2007) ..................................................20

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005) ..........................................................14, 15

*Tasini v. N.Y. Times Co.*,
   206 F.3d 161 (2d Cir. 2000) ..............................................................11

*TechnoMarine SA v. Jacob Time, Inc.*,
   No. 12 Civ. 790 (KBF), 2013 WL 5231471 (S.D.N.Y. July 16, 2013) ................10

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................................23

*Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*,
   41 N.Y.2d 420 (1977) ..................................................................19, 20

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   369 F.3d 34 (2d Cir. 2004) .........................................................18, 19, 20

*Willner v. Willner*,
   145 A.D.2d 236 (2d Dep't 1989) ..........................................................19

*Wright v. Goord*,
   554 F.3d 255 (2d Cir. 2009) ................................................................9

*Wu v. John Wiley & Sons, Inc.*,
   No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885 (S.D.N.Y. Sept. 10, 2015) ..........11, 12

*Wu v. Pearson Educ., Inc.*,
   No. 09 CIV.6557 (RJH), 2010 WL 3791676 (S.D.N.Y. Sept. 29, 2010) ..............17

**Statutes**

17 U.S.C. § 505 .................................................................................... 8, 23, 24

**Other Authorities**

Fed. R. Civ. P.
    11 ........................................................................................................ 10
    26 .......................................................................................................... 8
    54 ........................................................................................................ 24
    56 .......................................................................................................... 9

3 Melville B. Nimmer & David Nimmer,
    *Nimmer on Copyright* § 10.15[A][4] (2015) ............................... 20-21

Restatement (Second) of Contracts § 203(c) (1981) ............................. 21

Plaintiffs and Counterclaim Defendants McGraw-Hill School Education Holdings, LLC and McGraw-Hill Global Education Holdings, LLC (together, "MHE"), through their undersigned counsel, submit this memorandum of law in support of MHE's motion for partial summary judgment on Defendant and Counterclaim Plaintiff Jon Feingersh Photography, Inc.'s ("JFPI") Counterclaims ("Counterclaims") (Doc. No. 7).

## INTRODUCTION

In the proverbial hope that some of its mud might stick to the wall, JFPI filed its Counterclaims in this case alleging a claim of copyright infringement based on photo license terms and uses it did not know, another claim of breach of contract based on agreements it had not seen, and a third claim for attorney's fees for a suit it has not won. Now, at the summary judgment stage, the record clearly shows that JFPI's muddy claims cannot stick.

Count I of the Counterclaims originally alleged 480 instances in which MHE purportedly made unauthorized use of JFPI's photos. JFPI admittedly filed this claim based on "every single licensing" transaction with MHE involving its images without actually assessing the true terms of the invoices at issue and MHE's actual use of the images. SUMF ¶ 79.[1] Not surprisingly, evidence produced by MHE demonstrates that its use (if any) of JFPI's images was authorized expressly by individual invoices as well as global agreements negotiated with agencies representing JFPI's work or implicitly through MHE's course of dealing with these agencies. Prior to this motion, JFPI had voluntarily withdrawn, with prejudice, its copyright claim as to 198 transactions. Now, MHE moves for partial summary judgment in its favor on Count I on the grounds that there is no material factual dispute that JFPI cannot establish 109 of its remaining

---

[1] MHE directs the Court to its Statement of Undisputed Material Facts ("SUMF"), filed contemporaneously with this memorandum of law, for its complete recitation of the facts material to this motion.

claims of copyright infringement.[2]  In addition, to further narrow the issues for trial, MHE seeks

a ruling, consistent with the Supreme Court's holding in *Petrella v. Metro-Goldwyn-Mayer, Inc.*,

134 S. Ct. 1962, 1970 (2014), that JFPI is barred from recovering damages for any infringing

acts that occurred more than three years before this action was filed.

Count II alleges that MHE has breached a boilerplate provision in certain invoices issued

to MHE by Corbis Corporation ("Corbis"), which JFPI, an admitted stranger to the invoice

transactions, purportedly has the right to enforce.  MHE now moves for summary judgment on

Count II on the grounds that JFPI has no standing against MHE with regard to Corbis's contracts

with MHE, that the condition precedent in the invoices' boilerplate clause has not been satisfied,

and the provision is otherwise unenforceable.

Count III asserts a purported cause of action for attorney's fees and costs under the

Copyright Act, MHE's agreements with Corbis, and other unidentified authorities.  MHE moves

for summary judgment on Count III on the grounds that the Court lacks subject matter

jurisdiction to adjudicate this claim, and alternatively, that the claim does not present a legally or

factually cognizable cause of action.

## SUMMARY OF FACTUAL BACKGROUND

### *The Parties*

McGraw-Hill Education is a leading publisher of textbooks and educational products for

pre-kindergarten through college and post-graduate courses.  SUMF ¶ 1.  The two operating

groups involved in this action are McGraw-Hill School Education Holdings, LLC ("MHSEH")

and McGraw-Hill Global Education Holdings, LLC ("MHGEH").  *Id.* ¶ 2.

---

[2] JFPI has alleged one claim of copyright infringement based on 480 transactions, each of which is alleged as a separate row in Exhibit A to the Counterclaims.  Doc. No. 7-1.  For the sake of brevity, each row shall be referred to herein as a "claim."

JFPI is a stock photography company based in Maryland, which, in addition to licensing its photographs directly, has appointed third party stock photography agencies to market and license its photographs. *Id.* ¶¶ 3 & 4. Among these agencies are The Stock Market ("TSM") and Zefa, Corbis, Blend Images, Getty Images and Superstock. *Id.* ¶ 4. Jon Feingersh ("Feingersh") is the president and sole owner of JFPI. *Id.* ¶ 3.

### MHE's Transactions with Corbis and TSM

At issue in this case are a series of transactions that MHE entered into with JFPI and its agencies from 1995 through 2013 for the use of JFPI's photos in its publications. *Id.* ¶ 39.

MHE obtained JFPI's photos in the same manner it did to obtain photos for use in its publications generally. *Id.* ¶ 5. A photo researcher would select stock (*i.e.*, nondescript, generic) photographs from many agencies' catalogues or online libraries, as part of the book design process. *Id.* ¶ 6. The researcher (or in some instances, permissions coordinator) would then contact the source of the photo – either the photographer directly or his agent – to request an invoice for MHE's use of the particular photo. *Id.* ¶ 7. In order to calculate the appropriate fee, the researcher would provide certain information relating to the anticipated use of the image, and the agency would issue an invoice accordingly. *Id.* ¶¶ 8 & 10. The agency's invoice would typically reiterate the estimate of anticipated use provided by MHE as well as the corresponding fee(s). *Id.* ¶ 10.

Generally, a stock photo agency would determine the photo usage fee based upon its standard rate structure for the estimated use of the image. *Id.* ¶ 12. For valuable, high-volume clients such as MHE, however, certain agencies often would offer more favorable prices. *Id.* ¶ 13. Beginning in at least 1997, TSM and Corbis memorialized these preferred rates and terms with MHE through written preferred pricing agreements. *Id.* ¶ 14. Initially the parties'

agreements were simple rate cards identifying the fees applicable to specified tiers of estimated usage. *Id.* ¶ 16.

In 2003, MHE negotiated a more extensive agreement with Corbis, specifying the preferred rates based on estimated use and the rights included within those rates and explicitly codifying other aspects of the parties' relationship. *Id.* ¶ 17. In 2006, MHE and Corbis entered into another agreement (the "2006 PPA"), essentially extending the 2003 PPA until the parties could complete a more fulsome request-for-proposal process. *Id.* ¶ 19.

In addition to delineating usage fees, these agreements also grant certain rights automatically with respect to any image subject to the PPA. *Id.* ¶ 15. For example, the 2003 PPA expressly states that any fee paid by MHE would constitute payment for "all ancillary use and all delivery methods."[3] *Id.* ¶ 21. The 2006 PPA broadens the set of standard rights included with every image to encompass "all languages" in addition to "all ancillary use and all delivery methods."[4] *Id.* ¶ 22.

Both the 2003 PPA and the 2006 PPA append a set of fine-print terms and conditions that included provisions relating to choice of law, limitations of liability, integration, and other boilerplate contract issues. *Id.* ¶ 26. These terms-and-conditions pages also contain a paragraph entitled "Unauthorized Use," which states, in relevant part:

> Unauthorized use of these Images constitutes copyright infringement and shall entitle **Corbis** to exercise all rights and remedies under applicable copyright law, including an injunction preventing further use and monetary damages against all users and beneficiaries of the use of such Images. **Corbis in its sole discretion**

---

[3] "Ancillaries" refers to products with content related to and/or supporting the main edition of a product, such as workbooks, transparencies, CD-ROMs and lab manuals. SUMF ¶ 11. "Delivery methods" refers to the format of the product, such as print or electronic. *Id.*

[4] "Language" refers to the language in which the content of a publication will be produced. SUMF ¶ 11.

**reserves the right** to bill you (and you hereby agree to pay) ten (10) times the normal license fee for any unauthorized use, in addition to any other fees, damages, or penalties Corbis may be entitled to under this Agreement or applicable law. The foregoing is not a limiting statement of Corbis' rights or remedies in connection with any unauthorized use.

*Id.* ¶ 28 (emphases added). The 2003 and 2006 PPAs are the only agreements between MHE and TSM or Corbis to contain this provision (referred to herein as the "Ten Times Provision"). *Id.* ¶ 38.

The 2003 and 2006 PPAs specifically state that the rights granted under the pricing agreements unequivocally take precedence over any conflicting language in the terms and conditions. *Id.* ¶ 26. Furthermore, because the terms and conditions incorporate by reference the invoices, the 2003 and 2006 PPA terms also take precedence over any conflicting invoice terms. *Id.* ¶ 27. Thus, the scope of MHE's written authorization to use each image it obtained from TSM and Corbis is found in the governing pricing agreement, as well as the invoice and the terms and conditions to the extent such terms do not conflict with the agreement.[5] *Id.* ¶¶ 26 & 27.

MHE and Corbis finalized a new agreement in 2009, effective February 27, 2009 (the "2009 PPA"). *Id.* ¶ 31. The parties extended the 2009 PPA until April 1, 2014, at which time they entered into a new agreement. *Id.* ¶ 32.

---

[5] With regard to the claims not at issue in this motion, MHE will show at trial that the full scope of its permission to use the images it obtained from Corbis and TSM arises not only from such written materials as MHE's original invoice request, the resulting invoice and the governing pricing agreements, but also through the parties' fifteen-year course of dealing. However, for the purposes of this motion, MHE can show that its use (if any) of the images at issue in this motion was within the express parameters found in the invoices and agreements alone.

JFPI has licensed its work directly and through various stock photo agencies, including TSM, Blend Images, Getty Images, Zefa and Superstock. *Id.* ¶ 4. The role of a stock photography agency is to represent the contributor's work and to license it for maximum financial benefit. *Id.* ¶ 40. However, the photographer typically has no influence over the fees charged by the agency and, in the case of JFPI, never sees the agreements between the agency and its licensees such as MHE and rarely, if ever, even sees an agency's invoices. *Id.* ¶ 40.

JFPI's relationship with TSM was governed by a series of written representation agreements with TSM, the most recent of which was an agreement dated March 1, 1999 (the "TSM Agreement"). *Id.* ¶ 41. Among other things, this agreement provided JFPI with the right to audit TSM's books and records. *Id.* ¶ 57. This agreement provided for an initial three-year term with automatic renewal unless either party terminated. *Id.* ¶ 41. After Corbis acquired TSM in March 2000, JFPI executed an assignment of the TSM Agreement to Corbis dated March 24, 2000. *Id.* ¶¶ 42 & 43. JFPI subsequently terminated the TSM Agreement on June 4, 2002. *Id.* ¶ 44.

As of June 5, 2003, JFPI entered into a written representation agreement with Zefa (the "Zefa Agreement"). *Id.* ¶ 46. This agreement provided Zefa with the sole discretion to accept, market, price and license images submitted by JFPI and granted JFPI the right to audit Zefa's books and records. *Id.* ¶¶ 46-49 & 57. JFPI also designated Zefa as the exclusive agent to bring claims of copyright infringement. *Id.* ¶ 51. This agreement provided for an initial three-year term with automatic renewal unless either party terminated. *Id.* ¶ 52. Corbis acquired Zefa in January 2005. *Id.* ¶ 53. Corbis proposed an amendment to the Zefa Agreement on February 26,

2009, but JFPI rejected it and affirmatively terminated the agreement on June 8, 2009. *Id.* ¶¶ 55 & 56.

JFPI never signed a written representation agreement with Corbis. *Id.* ¶ 45. Nevertheless, JFPI never objected to Corbis's representation of JFPI's photos, and JFPI has sought to audit Corbis's books and records with regard to JFPI's photos on several occasions, and Corbis apparently complied to some extent. *Id.* ¶¶ 45, 58-63. On November 16, 2011, JFPI's counsel notified Corbis that JFPI wished to pursue legal action against MHE for unauthorized use of JFPI's images. *Id.* ¶ 66. In response, Corbis maintained its "full and complete authority to make and settle claims based on unauthorized use" of images it represents. *Id.* ¶ 67.

Notwithstanding Corbis' position, in or around April 2014, Maurice Harmon, one of JFPI's attorneys, contacted MHE's outside counsel concerning potential claims of copyright infringement by Feingersh. *Id.* ¶ 68. Mr. Harmon represented that his firm would provide copies of the invoices that Feingersh contended MHE had exceeded in order to facilitate potential settlement discussions; however neither Mr. Harmon nor his firm provided any additional information following that call. *Id.* Instead, another one of JFPI's attorneys sent a letter on July 3, 2014 (the "July 3 Letter") to MHE's inside counsel "regarding copyright infringement and related claims" against MHE, demanding confidential and proprietary information relating to hundreds of transactions allegedly involving JFPI's images. *Id.* ¶ 69.

*The Lawsuit*

On July 7, 2014, MHE filed this action for a declaratory judgment of nonliability for infringement as to the transactions identified in the July 3 Letter. *Id.* ¶ 70. On July 29, 2014, JFPI filed its Counterclaims with three causes of action. First, JFPI alleged a claim of copyright

infringement (Count I) based on 480 transactions, including many of the same transactions asserted in the July 3 Letter. *Id.* ¶ 71. The Counterclaims allege five types of infringement for each of the 480 transactions. *Id.* ¶¶ 81-86. Since filing the Counterclaims, JFPI has voluntarily dismissed its infringement claim with respect to 198 of these transactions. *Id.* ¶¶ 87. Furthermore, near the close of discovery, JFPI submitted a supplement to its Rule 26(a)(1) disclosures, significantly narrowing the transactions for which it seeks damages as well as the theories of infringement applicable to these transactions. *Id.* ¶¶ 88-89.

Second, JFPI alleged a breach of contract claim (Count II) based upon a provision found in a set of fine-print terms and conditions allegedly applicable to Corbis's transactions with MHE. *Id.* ¶ 72. The Counterclaims allege a penalty fee provision found in two standardized Corbis end user license agreements ("EULAs"), dated November 19, 2001 and June 2005, which is allegedly in MHE's pricing agreements with Corbis and for which JFPI contends that it is the intended beneficiary of such a provision. Countercl. ¶¶ 87 & 89.

Third, JFPI also alleged a claim for attorney's fees (Count III) pursuant to 17 U.S.C. § 505, MHE's "license agreements" with Corbis, "other statutes, the Federal Rules of Civil Procedure, or the Court's equitable powers." Countercl. ¶ 107.

## **ARGUMENT**

For the reasons set forth herein, MHE is entitled to partial summary judgment on the First Amended Complaint and Count I of the Counterclaims as to (i) its nonliability for infringement for 109 claims for which no genuine issue of fact exists and (ii) a legal ruling that JFPI can only recover damages for infringements, if any, that occurred within three years of this action. MHE is also entitled to summary judgment on Counts II and III of the Counterclaims as to its nonliability for breach of contract and attorney's fees, respectively.

## I.    LEGAL STANDARD

Summary judgment is appropriate where the moving party has established that there are no genuine issues as to any material facts, and that on the strength of those facts, the law requires judgment in the moving party's favor.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact" and may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" through affidavits or other admissible evidence.  *Anderson*, 477 U.S. at 248 (citations and internal marks omitted); *see also Celotex*, 477 U.S. at 322-23; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Nor may it rely on "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A party seeking summary judgment of non-infringement must establish that at least one element of the alleged copyright claim cannot be proven as a matter of law.  *Bill Diodato*

*Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 394 (S.D.N.Y. 2005). Those

elements are "ownership of a copyright and that defendant copied the protected material without

authorization." *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992); *Hamil Am., Inc. v. GFI*, 193

F.3d 92, 98 (2d Cir. 1999); *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 Civ. 790 (KBF), 2013

WL 5231471, at *7 (S.D.N.Y. July 16, 2013).

## II.    MHE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON JFPI'S COPYRIGHT INFRINGEMENT CLAIM SHOULD BE GRANTED

Based on JFPI's admissions and the unambiguous documentary evidence, there is no

issue of material fact as to MHE's nonliability for 109 claims of copyright infringement.

### A.    JFPI CONCEDEDLY CANNOT SHOW INFRINGEMENT FOR 86 CLAIMS

JFPI has conceded that it cannot meet its burden of proof as to 86 claims by admitting

that neither MHE nor the issuing agency – Corbis, Superstock or even JFPI itself – can locate an

extant copy of the alleged invoices.[6]  SUMF ¶ 90.  For each of these claims, JFPI has admitted,

by alleging the invoice details in Exhibit A to the Counterclaims, that MHE paid for a license fee

for the purported use.  Countercl., Ex. A.  Furthermore, for nearly all of these claims, JFPI has

submitted additional evidence of such payments in the form of royalty statements.[7]  SUMF ¶ 91.

---

[6] By separate motion filed on October 14, 2015, JFPI moved to dismiss without prejudice 85 claims on the grounds that none of the underlying invoices can be located.  Doc. No. 45.  Despite conceding the absence of an invoice underlying Row 334 to Exhibit A to the Counterclaims, SUMF ¶ 90, JFPI has not moved to dismiss this claim, presumably because it would draw attention to the fact that this particular claim is based on an invoice that JFPI itself appears to have issued but cannot now locate. Although summary judgment on all 86 claims is appropriate for the reasons discussed herein, MHE also intends to demonstrate that JFPI's October 14 motion is improper, unfounded and untimely, and will do so in due course by separate response.

[7] JFPI has not produced invoices and/or royalty statements for the claims alleged at Rows 334 and 480, despite the allegation that JFPI itself issued the invoice at Row 334.  Absent *any* record of these transactions, it would appear that these claims were pleaded without evidentiary support in violation of Rule 11(b)(3).

Where, as here, the existence of a license has been established – through the undisputed fact of MHE's license fee payments – it is JFPI, not MHE, that bears the burden to show MHE exceeded one or another restriction of the applicable licenses. *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000) (citing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995)), *aff'd*, 533 U.S. 483 (2001); *see also Wu v. John Wiley & Sons, Inc.*, No. 14 CIV. 6746 AKH AJP, 2015 WL 5254885, at *16 (S.D.N.Y. Sept. 10, 2015). Without the invoices, JFPI cannot establish the specifics of the terms of the licenses under which MHE paid its license fees, let alone that MHE actually violated those unknown license terms, and thus JFPI cannot meet its burden of proof on these 86 claims.

### B. JFPI CANNOT SHOW INFRINGEMENT FOR 23 ADDITIONAL CLAIMS

In addition to the 86 claims for which JFPI cannot prove the license terms, there are 23 claims for which JFPI unequivocally cannot show that MHE made the unauthorized use alleged. For 6 claims, the image alleged in the Counterclaims does not appear in the alleged publication: Rows 27, 109, 135, 136, 168, and 187. SUMF ¶ 92. For 5 claims, MHE's actual use is authorized by the express invoice terms, standing alone: Rows 299, 300, 301, 302 and 303. *Id.* ¶ 93. For 10 claims, MHE's actual use is authorized by the express invoice terms and the governing pricing agreements: Rows 101, 178, 181, 182, 193, 212, 221, 242, 259, and 321. *Id.* ¶¶ 15, 21, 22 & 94-96. Finally, for 2 claims, JFPI has alleged more uses of the alleged photo in a single publication than MHE actually made. *Id.* ¶¶ 97-98. For each of these 23 claims, JFPI cannot meet its burden to prove copyright infringement, and MHE is entitled to summary judgment.

### C.  DAMAGES ARE ONLY AVAILABLE FOR INFRINGING ACTS THAT OCCURRED AFTER JULY 7, 2011

MHE also seeks a ruling that JFPI may only recover damages for acts of infringement, if any, to the extent they occurred after the accrual date of July 7, 2011.  In the copyright context, where multiple acts of infringement are alleged, the statute of limitations operates as a limitation on damages:  a plaintiff is barred from recovering damages for any act of infringement that occurred prior to three years before filing its complaint.  As the Supreme Court recognized in *Petrella*, the Copyright Act's "statute of limitations runs separately from each violation," and "[t]he infringer is insulated from liability for earlier infringements of the same work."  *Petrella*, 134 S. Ct. at 1969.  The Supreme Court summarized:

> [W]hen a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Id.* at 1970; *see also Wu*, 2015 WL 5254885, at *6 (holding that a copyright plaintiff may recover "'retrospective relief running only three years back from the date the complaint was filed'" (quoting *Petrella*, 134 S. Ct. at 1970)); *cf. Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 80 F. Supp. 3d 535, 542 (S.D.N.Y. 2015) (construing limitation period for common law copyright claim) ("Therefore Flo and Eddie's claim is not time-barred, but it can recover damages for infringement only going three years back—that is, Flo and Eddie can recover damages for acts of infringement committed on or after August 16, 2010.").  Thus, MHE seeks a ruling, as a matter of law, that JFPI may not recover any damages for infringements that occurred prior to July 7, 2011.  *See, e.g.*, *Petrella*, 134 S. Ct. at 1970 ("In sum, Congress provided two controlling time prescriptions:  the copyright term, which endures for decades, and may pass from one generation

to another; and § 507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief running only three years back from the date the complaint was filed.").

An exact determination of which claims are affected by such a ruling is not necessary at this time; the discovery record has identified the precise printing and distribution dates for all of the identifiable titles at issue, and therefore, a general ruling on the principle will allow the parties to calculate properly any damages for the remaining claims.

## III.    MHE'S MOTION FOR SUMMARY JUDGMENT AS TO JFPI'S BREACH OF CONTRACT CLAIM SHOULD BE GRANTED

MHE is entitled to summary judgment on Count II of the Counterclaims for breach of contract because JFPI cannot establish standing nor can it meet its burden of proof as to the breach, and furthermore, the provision at issue is unenforceable as a matter of law.

### A.    JFPI Cannot Establish The Requisite Standing To Bring Its Breach Of Contract Claim

JFPI seeks to enforce the "Ten Times Provisions" in the 2003 and 2006 PPAs,[8] which govern *__Corbis__*' relationship with MHE.  JFPI is not a party to either agreement nor can it establish any right as a third party to enforce this provision.

#### 1.    JFPI Cannot Show That It Is A Third Party Beneficiary

The only parties to the 2003 and 2006 PPAs are MHE and Corbis.  SUMF ¶ 24.  Under New York law,[9] a "non-party to a contract . . . lacks standing to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third party in question."  *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (citing

---

[8] The 2003 and 2006 PPAs are the only agreements between Corbis and MHE that contain a Ten Times Provision.  SUMF ¶¶ 28 & 38.

[9] The 2003 and 2006 PPAs both provide that "[a]ny dispute regarding this Agreement shall be governed by the laws of the State of New York," as well as certain chapters of the United States Code not relevant to the contract issues.  SUMF ¶ 29.

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985)); *see also*

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (collecting

cases) (no third party beneficiary claim "where the contract rules out any intent to benefit the

claimant, or where the complaint relies on language in the contract or other circumstances that

will not support the inference that the parties intended to confer a benefit on the claimant.").

Under New York law, to prevail on a third party beneficiary theory, JFPI must show that

it was the intended beneficiary, rather than merely an incidental one. *See, e.g.*, *Madeira v.*

*Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006). A third party can demonstrate

that it is an intended beneficiary by showing that either (i) "no one other than the third party can

recover if the promisor breaches the contract" or (ii) "the language of the contract . . . clearly

evidences an intent to permit enforcement by the third party, as by fixing the rate or price at

which the third party can obtain services or goods." *Fourth Ocean Putnam Corp.*, 66 N.Y.2d at

45 (citations omitted); *see also Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157,

162 (S.D.N.Y. 1998).

JFPI cannot establish that it is the intended beneficiary of the 2003 and 2006 PPAs. First,

the Ten Times Provision on its face provides **Corbis** the right to recover in the event of any

"unauthorized use": "Unauthorized use of these Images constitutes copyright infringement and

shall entitle **Corbis** to exercise all rights and remedies under applicable copyright law . . ." and

"[t]he foregoing is not a limiting statement of **Corbis's** rights or remedies in connection with any

unauthorized use." SUMF ¶ 28 (emphases added). The Ten Times Provision itself specifically

grants *Corbis*, and no one else, the "sole discretion" to bill MHE for any unauthorized use of the

images. *Id.*

Conversely, nothing in the Ten Times Provision remotely suggests that JFPI, or any Corbis contributor for that matter, could enforce this provision. The 2003 and 2006 PPAs identify only MHE and Corbis as the parties, contain integration clauses and do not identify any third party in their choice of forum provisions, all of which "strongly suggest that the two parties to the contract intended the contract to concern and to benefit only themselves." *Subaru Distribs. Corp.*, 425 F.3d at 125; *see also Saska v. Metro. Museum of Art*, 42 Misc. 3d 548, 559 (Sup. Ct. N.Y. Cty. Oct. 29, 2013) ("[t]he parties' intent to benefit the third party must be apparent from the face of the contract." (citations omitted)), *aff'd on other grounds sub nom. Grunewald v. Metro. Museum of Art*, 125 A.D.3d 438 (1st Dep't 2015).[10]

Considering similar or identical arguments advocated by JFPI here, courts have rejected photographers' attempts to enforce provisions of contracts between stock photo agencies and publishers, concluding that the photographers are *incidental* beneficiaries of such agreements. *See, e.g.*, *Palmer/Kane LLC v. Houghton Mifflin Harcourt Publ'g Co.*, No. CIV.A. 13-11030-GAO, 2014 WL 183774, at *2 (D. Mass. Jan. 16, 2014); *Lefkowitz v. Houghton Mifflin Harcourt Publ'g Co.*, No. 12-10614-FDS, 2013 WL 3816717, at *3-4 (D. Mass. July 19, 2013). In *Lefkowitz*, the photographer attempted to enforce the Ten Times Provision found in the Corbis standard terms and conditions. The court denied third party standing to the photographer, on the grounds that Corbis had the right to enforce the Ten Times Provision and there was no evidence

---

[10] JFPI's assertion of standing as an intended beneficiary fails for the additional reason that its attempt to enforce the Ten Times Provision conflicts with Corbis's decision ***not*** to enforce it. Countercl. ¶ 73; SUMF ¶¶ 66-68. "[Nonparties] should not be permitted to disregard the contracting party's decision as to the benefits it seeks to gain from its contract and the enforcement benefits it negotiated to achieve those benefits." *Saska v. Metro. Museum of Art*, 42 Misc. 3d 548, 561 (Sup. Ct. N.Y. Cty. Oct. 29, 2013) (holding that plaintiffs, as alleged intended beneficiaries of a lease could not force the landlord to enforce its rights against the tenant, where the landlord demonstrated its intent not to), *aff'd on other grounds sub nom. Grunewald v. Metro. Museum of Art*, 125 A.D.3d 438 (1st Dep't 2015).

of an intent to permit the photographer to enforce it or even benefit from it. *Lefkowitz*, 2013 WL 3816717, at *4. JFPI seeks to enforce the identical provision as in *Lefkowitz*, and, for the same reasons, its basis for standing should be rejected.

### 2. JFPI Cannot Show An Assignment Of Corbis's Rights

JFPI can offer no evidence to support an assertion that Corbis assigned its rights under the 2003 and 2006 PPAs to JFPI. These agreements, which encompass MHE's use of *any* image represented by Corbis, do not mention, let alone assign any rights to, any individual photographer. SUMF ¶¶ 24 & 25. Moreover, JFPI cannot show that Corbis assigned any rights to it under any other agreement. The only agreement between Corbis and JFPI during the period when the 2003 and 2006 PPAs governed is the Zefa Agreement, beginning when Corbis acquired Zefa in January 2005.[11] *Id.* ¶ 53. The Zefa Agreement does not assign any rights to JFPI – in fact, it is *JFPI* that irrevocably assigns to *the agency* the exclusive right to make claims based on unauthorized use of its images. *Id.* ¶¶ 47-51.

Fundamentally, both the 2003 and 2006 PPAs expressly limit the parties to those agreements to "you [MHE] and Corbis," referring to photographers only in the context of requiring a photo credit. SUMF ¶¶ 24-25. The PPAs' exclusion of JFPI as a party forecloses any enforcement by JFPI of the provisions in the Corbis-MHE agreements.

### B. JFPI Cannot Establish The Elements Of A Breach Of Contract

Even if JFPI had standing, JFPI cannot establish the requisite elements of a breach of contract based on the Ten Times Provision.

---

[11] JFPI never entered into a representation agreement with Corbis. SUMF ¶ 45. Although JFPI assigned the TSM Agreement to Corbis in 2000, JFPI terminated the agreement in June 2002. *Id.* ¶ 44. To the extent the Zefa Agreement was assigned to Corbis, the scope of the parties' respective rights and obligations are limited to images represented by Zefa.

### 1.    JFPI Cannot Show Satisfaction Of The Condition Precedent

Count II asserts that MHE has breached its agreement with Corbis by failing to respond to JFPI's demand for payment pursuant to the Ten Times Provision. JFPI cannot show, however, that Corbis first billed MHE for the ten times fee, and in this absence of any evidence as to the fulfillment of this condition precedent, Count II fails as a matter of law.

Under New York law, when a contract requires the plaintiff to provide a particular form of notice or demand for performance, the plaintiff must allege satisfaction of this condition in order to make out a breach of contract claim. *Mahoney v. Sony Music Entm't*, No. 12 Civ. 5045 (RJS) (AJP), 2013 WL 491526, at *6 (S.D.N.Y. Feb. 11, 2013) ("Where, as here, a contract contains an unambiguous condition precedent, plaintiff must plead compliance therewith to state a breach of contract claim; otherwise, the claim should be dismissed."). This Court (Holwell, J.) considered a provision similar to the Ten Times Provision, holding that absent allegations that the agency had billed the publisher, and the publisher refused to pay, the complaint did not allege the satisfaction of a condition precedent and the claim was insufficient as a matter of law. *Wu v. Pearson Educ., Inc.*, No. 09 CIV.6557 (RJH), 2010 WL 3791676, at *6 (S.D.N.Y. Sept. 29, 2010)

The Ten Times Provision states that "Corbis *in its sole discretion* reserves the right to bill [MHE] (and [MHE] hereby agree[s] to pay) ten (10) times the license fee for any unauthorized use, in addition to any other fees, damages and penalties Corbis may be entitled to under this Agreement and applicable law." SUMF ¶ 28. Thus, the plain language of this provision makes clear that unless Corbis elects to exercise its discretion to issue a bill for the unauthorized use (which it is not obligated to do), MHE has no duty to make such payment. There is no evidence that Corbis billed MHE for any unauthorized use, with or without the ten times multiplier. To the contrary, Corbis declined to bring a claim against MHE following JFPI's request. *Id.* ¶ 67.

JFPI is a stranger to the alleged agreement between Corbis and MHE (for the reasons set forth in the preceding section), therefore any demands by it would not trigger MHE's obligation to pay.

Finally, JFPI's claim that MHE has frustrated *JFPI*'s efforts to ascertain the extent of MHE's alleged use is immaterial. Countercl. ¶¶ 90-92. The general rule is that "a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." *In re Bankers Trust Co.*, 450 F.3d 121, 128 (2d Cir. 2006) (citing *Amies v. Wesnofske*, 255 N.Y. 156, 163-64 (1931)). However, this general rule does not apply here. The Second Circuit, analyzing *Amies*, distinguished between situations in which the promisor actively hindered the fulfillment of the condition and those in which the promisor simply did nothing to assist it. *Id.* Only in the former situation would the failure to fulfill a condition precedent be excused.[12] *Id.* Here, JFPI cannot point to any action on the part of MHE to frustrate *Corbis*'s ability to issue an invoice.

### 2. The Contract Provision At Issue Is Unenforceable As A Matter Of Law

Count II fails for the separate reason that the Ten Times Provision, which allows recovery of ten times the license fee "in addition to any other fees, damages and penalties Corbis may be entitled to under this Agreement and applicable law," is an unenforceable penalty. SUMF ¶ 28. Under New York law, "where the damages flowing from a breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the contemplated injury, the stipulated sum will be treated as a penalty and disallowed." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004). Additionally, a contractual provision

---

[12] The Second Circuit, in dicta, questioned the continued application of the Court of Appeals' holding in *Amies*, noting that the Restatement (Second) of Contracts employs a different analysis. *In Re Bankers Trust Co.*, 450 F.3d at 128 n.4. That analysis turns on "the scope of the promisor's duty to the promisee with respect to the condition." *Id.* Under either analysis, the crucial point is that MHE did nothing to impede the ability of Corbis, the only other party to the contract, to fulfill the condition.

that permits recovery of both liquidated damages and actual damages is unenforceable. *Id.*; *see also Willner v. Willner*, 145 A.D.2d 236, 240-41 (2d Dep't 1989) ("where there is doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause, it should be resolved in favor of a construction which holds the provision to be a penalty."). The Ten Times Provision fails in every regard.

First, by the terms of the Ten Times Provision itself, the damages resulting from a breach of contract are readily ascertainable. Implicit in the requirement that MHE pay "ten (10) times the license fee for any unauthorized use" is the proposition that the amount of the actual license fee was already known to the parties or is readily capable of being calculated. *See Phillips v. Phillips*, 820 S.W.2d 785, 788-89 (Tex. 1991) (holding that damages under similar "ten times" provision were not "incapable or difficult of estimation" because "[t]he provision assumes actual damages can and will be determined, indeed must be determined, before the prescribed multiplier can be applied"). Thus, the Ten Times Provision does not serve the primary justification for a liquidated damages clause, which is to provide certainty "in those situations where it would be difficult, if not actually impossible, to calculate the amount of actual damage." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977).

Second, the Ten Times Provision is unenforceable because, by multiplying the appropriate damages by a factor of ten, it permits a plainly disproportionate recovery. *See Phillips*, 820 S.W.2d at 789 (holding that similar "ten times" provision permitted an unreasonable recovery because "instead of attempting to forecast actual damages, it calls for them to be determined and then multiplied"). Courts have found a ten times multiplier of actual damages to be punitive and disproportionate. *See, e.g.*, *Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004) (holding that ten times multiplier

"does not define a fair and reasonable license fee, but represents concepts of punishment for infringement, deterrence of similar behavior in the future, and recompense for the costs and effort of litigation," which "form no part of 'actual damages'"); *Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 649 (S.D. Tex. 2007) (calling ten times multiplier "punitive in nature"). The purpose of the Ten Times Provision is not to ensure compensation for the actual harm suffered (*i.e.*, the license fee), but rather to deter and punish the unauthorized use of images, rendering the provision an unenforceable penalty. *See Truck Rent-A-Ctr.*, 41 N.Y.2d at 424 ("A clause which provides for an amount plainly disproportionate to real damage is not intended to provide fair compensation but to secure performance by the compulsion of the very disproportion.").

Finally, the Ten Times Provision is unenforceable because it ostensibly permits Corbis to recover the "ten times" penalty "***in addition to*** any other fees, damages and penalties Corbis may be entitled to under this Agreement and applicable law." SUMF ¶ 28 (emphasis added). "Under no circumstances . . . will liquidated damages be allowed where the contractual language and attendant circumstances show that the contract provides for the full recovery of actual damages, because liquidated and actual damages are mutually exclusive remedies under New York law." *U.S. Fid. & Guar. Co.*, 369 F.3d at 71; *see also MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1271-76 (11th Cir. 1999) (invalidating license provision that permitted licensor to receive liquidated damages and pursue any other available remedies); *Jarro Bldg. Indus. Corp. v. Schwartz*, 54 Misc. 2d 13, 15 (2d Dep't 1967) ("If appellant here could recover both liquidated damages and actual damages, there would be no question that the 'liquidated damages' provision was a penalty."); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A][4]

(2015) ("[R]ecovery of both contract damages and copyright damages is impermissible, even if the contract purports to allow that double recovery in the guise of liquidated damages.").

Indeed, in its prayer for relief, JFPI seeks both an award of actual damages and profits and ten times the license fee for unauthorized uses, among other remedies. As such, the Ten Times Provision would allow an impermissible double recovery, and thus is punitive in nature. As a result, the punitive Ten Times Provision is barred as a matter of law, and any claim based thereon must fail.

### 3. The Ten Times Provision Must Be Subordinated To More Specific Contract Provisions

Even were it not punitive, fundamental rules of contract interpretation dictate that the Ten Times Provision cannot stand in light of the more specific language in the 2003 and 2006 PPAs governing the fees Corbis will charge for use of its images. It is axiomatic that courts construing contracts must give "'specific terms and exact terms . . . greater weight than general language.'" *Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (1981)); see *id.* at 413–14 ("Even where there is no 'true conflict' between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." (internal quotation marks omitted)); *see also John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983) ("New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."); *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 420-21 (6th Cir. 2008) (applying choice of law provision found in bill of lading between plaintiff and defendant rather than provision found in plaintiff's general terms and conditions).

The Ten Times Provision appears in the boilerplate, fine-print terms and conditions appended to the 2003 and 2006 PPAs. It purports to establish the amount that MHE must pay for use that is not authorized. However, this amount is already set forth in the main body of the PPAs themselves. These PPAs provide specific information as to the fees MHE would pay for tiers of use, including a tier for unlimited print runs. SUMF ¶¶ 18, 19 & 94. Moreover, both agreements expressly provide that, in the event of a conflict, the terms of the pricing agreement shall trump the fine-print terms and conditions. SUMF ¶ 26. Accordingly, the Ten Times Provision is null in light of the actual pricing grids in the 2003 and 2006 PPAs that determine the amount MHE must pay in the event of use beyond the original invoice payments.

### C. JFPI Cannot Establish That The Ten Times Provision Applies To Invoices Prior To January 1, 2003 Or After February 26, 2009

Finally, even if JFPI could enforce the Ten Times Provision, which it cannot, it would apply at most only to the invoices subject to the 2003 and 2006 PPAs. In its Counterclaims, JFPI alleges, upon information and belief, that a provision similar to the Ten Times Provision found in the November 19, 2001 and June 2005 EULAs also applies to MHE's transactions with Corbis dated on or after November 19, 2001. Countercl. ¶ 89 & 102. In 2001, however, MHE's transactions with Corbis and TSM were governed by specifically negotiated agreements with each agency: the 2000 Higher Ed Rate Card, the 2000 TSM Rate Card, and the 2000 Higher Ed TSM Rate Card. SUMF ¶ 16. None of these agreements contains a Ten Times Provision. *Id.* ¶ 38. Similarly, as of February 27, 2009, MHE entered into a new agreement with Corbis. *Id.* ¶ 31. The 2009 PPA does not contain a Ten Times Provision. *Id.* ¶ 38. Thus, the Ten Times Provision could only apply, if at all, and MHE submits that it does not, to transactions issued between January 1, 2003 through February 26, 2009.

However, for the reasons discussed heretofore in this Section, JFPI cannot enforce this provision against MHE, and MHE is entitled to summary judgment on Count II.

## IV. MHE'S MOTION FOR SUMMARY JUDGMENT AS TO JFPI'S ATTORNEY'S FEES CLAIM SHOULD BE GRANTED

Count III of the Counterclaims purports to be a "claim" to recover attorney's fees and costs based on 17 U.S.C. § 505, which allows for a discretionary award of costs to the *prevailing* party in a copyright infringement action, a provision in MHE's agreements with *Corbis* entitling *Corbis* to recover fees if it prevails in a dispute, and other unidentified statutes and rules under which JFPI may be entitled to recover fees. [13]  JFPI has no legal or factual basis for this claim.

First, the Court lacks subject matter jurisdiction over JFPI's cause of action because it is contingent upon a future event:  namely, that JFPI becomes the prevailing party.  Under such circumstances, there is no *present* claim or controversy:  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).  Considering another photographer's attempt to assert an independent cause of action for attorney's fees, an Arizona district court concluded that "[a]t this time, there are no attorney's fees in controversy. Plaintiff's speculation that he will be the prevailing party under the Copyright Act or the alleged contracts is insufficient to establish jurisdiction."  *Degginger v. McGraw-Hill Global Educ. Holdings LLC*, No. CV-14-2429-TUC-DCB, 2015 WL 917938, at *2 (D. Ariz. Mar. 3, 2015).

---

[13] The 2003, 2006 and 2009 PPAs contain provisions permitting the prevailing party to recover attorney's fees and costs.  SUMF ¶¶ 29 & 37.  For the reasons set forth *supra* in Section III(a), JFPI cannot enforce any provision in the 2003 and 2006 PPAs.  By the same reasoning, JFPI cannot enforce the 2009 PPA:  It cannot show that Corbis assigned any rights to it nor can JFPI claim intended beneficiary status under the 2009 PPA.  Under the 2009 Agreement, the fees provision entitles the prevailing party, either (and only) Corbis or MHE, the right to recover fees, thereby reserving the right to Corbis and foreclosing recovery by any other party.  *Id.*

Second, as numerous courts have recognized, there is no legally cognizable claim for attorney's fees under the Copyright Act, which recognizes only a cause of action for infringement.[14] *Id.* (explaining that attorney's fees are a *remedy* for an infringement action); *see also Chivalry Film Prods. v. NBC Universal, Inc.*, No. 05 Civ. 5627(GEL), 2006 WL 89944, at *4 (S.D.N.Y. Jan. 11, 2006) (holding plaintiff's "demand [for attorney's fees] does not state a separate cause of action, but merely requests a form of relief in connection with plaintiff's copyright claim. To the extent that plaintiff attempts to assert a separate cause of action, [that count] is dismissed."); *Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., Inc.*, No. 3:09-CV-01098, 2011 WL 4729807, at *6 (M.D. Tenn. Oct. 7, 2011) (dismissing defendant's counterclaim for an award of attorney's fees as "an independent free-standing claim," distinguishing it from prayers for the same relief within its copyright claims).

Finally, as a factual matter, JFPI cannot meet its burden of proof as to this "claim." The central element of JFPI's theory of recovery under the Copyright Act or MHE's agreements with Corbis is that JFPI is the prevailing party. Because JFPI cannot establish that it is the prevailing party at this stage, MHE is entitled to summary judgment. *Celotex*, 477 U.S. at 322.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment.

---

[14] JFPI's claim is improper as a procedural matter as well: Rule 54 of the Federal Rules requires that a request for fees must be made *by motion* within 14 days of *entry of judgment* "unless the substantive law requires those fees to be proved at trial." Fed. R. Civ. P. 54; *see also Degginger*, 2015 WL 917938, at *3 The Copyright Act does not require a party to prove fees at trial. 17 U.S.C. § 505.

Dated:  October 19, 2015

By:    _s/    Christopher P. Beall_
     Christopher P. Beall
     Marisa Office
     Levine Sullivan Koch & Schulz, LLP
     321 West 44th Street, Suite 1000
     New York, New York  10036
     (T): (212) 850-6100
     (F): (212) 850-6299
     cbeall@lskslaw.com
     moffice@lskslaw.com

*Plaintiffs McGraw-Hill School Education Holdings, LLC and McGraw-Hill Global Education Holdings, LLC*